IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| KIM NEWPORT and THOMAS ANDREW NEWPORT, individually, and as next of kin of PEYTON NEWPORT, deceased,<br><br>    Plaintiffs,<br><br>v.<br><br>MORGAN COUNTY, TENNESSEE and COREY BLAKE PRYOR, individually and in his professional capacity,<br><br>    Defendants. | Case No.:_____ |

## COMPLAINT

**COME NOW**, the Plaintiffs, Kim Newport and Thomas Andrew Newport, individually and as next of kin of Peyton Newport, by and through undersigned counsel, and files this their Complaint against Defendants Morgan County, Tennessee and Corey Blake Pryor, in his individual and professional capacities, as follows:

### Nature of Action

1. This action arises out of the wrongful death of Plaintiffs' son, Peyton Newport, who died on March 15, 2024. Plaintiffs bring this action under 42 U.S.C. § 1983 and Tennessee law for money damages for the wrongful death of Peyton Newport ("Decedent").

### Parties

2. Plaintiffs Kim Newport and Thomas Andrew Newport ("Plaintiffs") are citizens and residents of Morgan County, Tennessee, and are the parents and next of kin of Peyton Newport.

3. Plaintiffs are the proper persons to bring this wrongful death action under Tenn. Code Ann. § 20-5-106(a) and federal law.

4. The Decedent, Peyton Newport, was a citizen and resident of Morgan County, Tennessee. At the time of his wrongful death on March 15, 2024, the Decedent was unmarried and childless. The Decedent was born on June xx, 2006 and died on March 15, 2024. He was seventeen (17) years old.

5. Defendant Corey Blake Pryor ("Defendant Pryor") is a deputy with the Morgan County Sheriff's Office ("MCSO") and is sued in his individual and professional capacities. Defendant Pryor is a "person" under § 1983 and at all relevant times acted under color of law.

6. Upon information and belief, Defendant Pryor was acting as an employee and/or agent of Defendant Morgan County and in the course and scope of his employment. In the alternative, Defendant Pryor was acting as a rogue agent and unauthorized officer of the law and is liable individually for his actions.

7. Upon information and belief, Defendant Pryor is a resident of Fentress County, Tennessee.

8. Defendant Morgan County, Tennessee is a municipality organized under the laws of Tennessee. Defendant Morgan County is a "person" under § 1983.

**Jurisdiction and Venue**

9. Plaintiffs bring this action under 42 U.S.C. § 1983.

10. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

11. This Court has jurisdiction of Plaintiffs' state laws claims under 28 U.S.C. 1367(a).

12. Plaintiffs have contemporaneously filed a state case in Morgan County Circuit Court. In the event that these cases are consolidated, this Court has jurisdiction over Plaintiffs' state law claims, including, but not limited to, negligence, negligence per se, negligent hiring, and negligent training.

13. Venue is proper in this district under 28 U.S.C. 1391(b) because Defendants reside in this district and a substantial part of the events and omissions giving rise to the Plaintiffs' claims occurred in this district.

**Facts**

14. On or about March 15, 2024, while on an errand for his mother to get dog food, Peyton Newport was killed as a result of an unlawful and unnecessary police pursuit initiated by Morgan County Sheriff's Office deputy Corey Blake Pryor.

15. Upon information and belief, Defendant Pryor was off duty and outside of his law enforcement jurisdiction at the time he initiated the pursuit.

16. On or about March 15, 2024, without probable cause, or even reasonable suspicion to believe there was criminal activity, and based on false pretenses, Defendant Pryor initiated a high speed chase of the Decedent from the driveway of Defendant Pryor's home in Fentress County.

17. Defendant Pryor was acting within the course and scope of his employment with the Morgan County Sheriff's Office, as he utilized his police radio to the dispatch operator and to his supervisor at the time he initiated the pursuit and throughout. Upon information and belief, Defendant Pryor was driving an unmarked police truck belonging to MCSO and/or Defendant Morgan County.

18. The high-speed pursuit wound through Highway 52 in Fentress County. Highway 52 is a narrow, two lane highway with many straight aways and curves, and is heavily traveled by large commercial and industrial trucks. Because of the nature of the roadway and traffic, it is common for drivers to use the passing lanes to pass the slower moving commercial and industrial trucks.

19. As Defendant Pryor lived on Highway 52 and drove on Highway 52 on a daily basis, he was aware of the dangerous conditions of this stretch of Highway 52, and was aware of the driving habits of residents to pass slow moving commercial and industrial trucks. Nevertheless, Defendant Pryor disregarded the dangerous road conditions and continued the unnecessary pursuit of the Decedent without any legal justification.

20. While pulling out of his driveway, Defendant Pryor, without the aid of a radar gun or other speed detection equipment, began to chase the Decedent on Highway 52 in his unmarked police truck and in civilian clothes without any legal justification. Fearing for his safety, the Decedent fled from Defendant Pryor's pursuit.

21. During the pursuit, Defendant Pryor was directed by his supervisor to end the pursuit if he "can't get the plate right quick." Given the circumstances, Defendant Pryor should have been directed to end the pursuit immediately.

22. Defendant Pryor did not end the pursuit; instead, he continued to pursue the Decedent until the Decedent's fatal crash, chasing at speeds of 90 miles per hour or higher. As a result, the Decedent's vehicle skidded off the road, hit a tree, and killed him instantly.

23. The applicable portion of the MCSO "Pursuit Policy" is as follows:

**Officers may initiate and/or continue a vehicular pursuit when all the following conditions are met:**

    a. **The suspect refuses to stop at the direction of the officer; and**
    b. **The suspect, if allowed to flee, would present an imminent danger to human life or cause serious injury.**

**In determining whether a pursuit is objectively reasonable to initiate, and/or continue, officers must consider the following factors:**

    a. **The risk of injury to innocent third parties must be weighed against the immediate need to apprehend the fleeing suspect.**
    b. **Alternative methods of apprehension, including knowledge of the identity of the suspect(s) and possible destination.**

      **c. The nature and severity of the known offense(s).**
      **d. Presence or absence of pedestrians, passengers in the suspect OGV, traffic density.**
      **e. Speeds in relationship to the following.**
      **f. Area of the pursuit (business, rural, residential, school zone).**
      **g. Time of day.**
      **h. Road and weather conditions.**
      **i. Visibility.**
      **j. The performance capabilities of the suspect vehicle vs the GV.**
      **k. The characteristics and driving behavior exhibited by the suspect.**
      **l. Likelihood of apprehension, including availability of assistance.**
      **m. Level of carelessness exhibited by suspect vehicle.**
      **n. The officer's driving skills and familiarity with roads; and**
      **o. Radio communication capability.**

24. It is abundantly clear from the Pursuit Policy that the high speed chase of the Decedent was not warranted under any circumstances. There is no indication that the Decedent committed any violent crimes or was an imminent danger to human life. In fact, the Plaintiffs allege that the Decedent committed no offense at all prior to the dangerous pursuit by Defendant Pryor. This pursuit should have never been initiated in the first place, or it should have been immediately terminated had Defendant Pryor been aware of and followed the MCSO Pursuit Policy.

25. Another section of the Pursuit Policy called "Evaluating the Circumstances" provides the following guidelines:

> **Generally, must pursuits should be terminated when the subject's actions appear to be motivated merely by a desire to evade apprehension absent further facts justifying continuation of the pursuit. Numerous studies on pursuits have shown most suspects who evade arrest by use of a motor vehicle do so because of:**
>
>     **c. A suspended or revoked driver's license**
>     **d. A desire to avoid arrest.**
>
> **Furthermore, such studies have shown a vast majority of offenders will slow down after law enforcement has discontinued pursuing them. Officers must decide to initiate and continue a pursuit based on the known criminal law violation committed in their presence or based on information known to them**

**at the time and not based on speculations or assumptions that a more serious or violent crime has been committed.**

26. Again, it is clear that if Defendant Pryor had followed procedure, Peyton Newport would be alive today. There were no facts justifying the continuation of the pursuit. Also, as the guidelines state, most suspects evade arrest because of a suspended driver's license. That is the case here, as the Decedent had only a driving permit, which is the likely and unfortunate reason that he evaded arrest. The guidelines also state that, "a vast majority of offenders will slow down after law enforcement has discontinued pursuing them." Defendant Pryor did not follow this guidance, as he continued the pursuit on a dangerous two lane highway, without legal justification, which ultimately led to the Decedent's untimely and unnecessary death.

27. The Decedent had no criminal record, no warrants, and his toxicology results were negative for drugs and alcohol.

## COUNT I - § 1983

<u>Constitutional Violations of Defendant Pryor</u>

28. The Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein and further allege the following:

29. Defendant Pryor committed the above described actions and/or omissions under color of law and by virtue of his authority as a law enforcement official with the MCSO.

30. Defendant Pryor substantially deprived the Decedent of the rights, privileges, and immunities guaranteed to him by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. §§ 1983 and 1988 including, but not limited to:

    a. Freedom from the unreasonable seizure of his person;

    b. Freedom from the use of deadly, unreasonable, unjustified, and excessive force;

c. Freedom from deprivation of life and liberty without due process of law;

   d. Freedom from arbitrary government actions which are so outrageous as to shock the conscience of a civilized society; and

   e. Freedom from state created danger.

31. As a direct and proximate result of Defendant Pryor's acts or omissions, the Decedent suffered injuries that caused his death.

32. Defendant Pryor's actions of initiating a high speed pursuit, without legal justification, through a dangerous stretch of highway, while off-duty and outside his jurisdiction, shocks the conscience.

33. Plaintiffs are entitled to an award of all damages sustained by Decedent, including the mental and physical suffering Decedent endured before his death; the pecuniary value of the life of the Decedent; and all medical and funeral expenses incurred.

34. Plaintiffs are further entitled to attorneys' fees, costs, and expenses of this action under 42 U.S.C. § 1988.

## COUNT II - § 1983

### Constitutional Violations of Defendant Morgan County

35. The Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein and further allege the following:

36. At all times pertinent herein, Defendant Pryor was acting by virtue of the laws of the State of Tennessee and by virtue of his position as a law enforcement officer with the MCSO.

37. Defendant Morgan County, by and through the MCSO and its elected officials, permitted and tolerated the practices and/or customs of its deputies, which violated the

Constitutional rights of the Decedent by allowing, acquiescing, and encouraging high speed pursuits.

38. The MCSO has a "Pursuit Policy" in place that provides guidelines for its deputies. Upon information and belief, Defendant Pryor was in radio contact with his supervisor during the pursuit of the Decedent. Neither Defendant Pryor, his supervisor, or anyone else involved following proper procedure.

39. To the extent that the MCSO "Pursuit Policy" is found to be adequate, the Defendants failed to follow their own policies and procedures, in that:

   a. They failed to engage in proper pursuit procedures;

   b. They failed to terminate the pursuit once the pursuit became too dangerous;

   c. They continued the pursuit with full knowledge of safer alternative means to apprehend or identify the driver;

   d. They failed to terminate the pursuit despite having no reason to believe that the Decedent committed a felony involving violence to another person; and

   e. They failed to terminate the pursuit because the pursuing officer lacked jurisdiction.

40. The conduct of Defendant Pryor in initiating and continuing the unwarranted and unlawful high speed pursuit of the Decedent was unjustified, unreasonable, and grossly disproportionate to any action of the Decedent, if any, and shocks the conscience of a civilized society, and constitutes the use of excessive and unreasonable force in violation of the right secured to the Decedent by the Fourth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. §§ 1983 and 1988.

41. Plaintiffs aver that the need for training with respect to the initiation, continuation, and termination of high speed pursuits is so obvious that Defendants' failure to do so is an obvious

failure to train, supervise, or control deputies and amounts to a reckless disregard and deliberate indifference to the rights of the public at large, including the rights of the Decedent.

42. Defendant Morgan County failed to train, supervise, or control its deputies in the initiation, continuation, and termination of high speed pursuits prior to the incident at issue in this case and this failure resulted in the death of the Decedent.

43. Such failure to train, supervise, and control was the "moving force" behind the violations of the Decedent's constitutional rights.

44. Upon information and belief, despite violating the statutes of the State of Tennessee and MCSO policies and procedures, Defendant Pryor was not reprimanded, disciplined, or terminated, and, accordingly, Defendant Morgan County, through the MCSO, ratified, condoned, acquiesced, or approved the conduct in this matter in all respects.

45. As a direct and proximate result of the Defendants acts or omissions, the Decedent suffered injuries that caused his death.

46. Plaintiffs are entitled to an award of all damages sustained by Decedent, including the mental and physical suffering Decedent endured before his death; the pecuniary value of the life of the Decedent; and all medical and funeral expenses incurred.

47. Plaintiffs are further entitled to attorneys' fees, costs, and expenses of this action under 42 U.S.C. § 1988.

## COUNT III

Individual Liability of Defendant Pryor

48. The Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein and further allege the following:

49. At all times material hereto, Defendant Pryor was acting under color of state law. Upon information and belief, Defendant Pryor was acting as an employee and/or agent of Defendant Morgan County and in the course and scope of his employment. In the alternative, Defendant Pryor was acting as a rogue agent and unauthorized officer of the law and is liable individually for his actions.

50. Defendant Pryor initiated and continued a high speed chase of the Decedent without legal justification.

51. The high speed pursuit led to the death of Peyton Newman, depriving him of his right to life under the Fourteenth Amendment of the United States Constitution, and thereby denying the Decedent due process of law.

52. Plaintiffs are entitled to an award of all damages sustained by Decedent, including the mental and physical suffering Decedent endured before his death; the pecuniary value of the life of the Decedent; and all medical and funeral expenses incurred.

53. Plaintiffs are further entitled to attorneys' fees, costs, and expenses of this action under 42 U.S.C. § 1988.

## Prayer for Relief

**WHEREFORE**, Plaintiffs respectfully pray for relief as follows:

1. That Defendants be made to answer this Complaint within the time allotted by the Federal Rules of Civil Procedure;

2. An award of all compensatory damages in an amount to be determined by a jury;

3. An award of all prejudgment and post-judgment interest;

4. A declaratory judgment against Defendants that practices applied to the Plaintiffs and/or the Decedent were unconstitutional, and an injunction enjoining these Defendants from any further such conduct;

5. An award of reasonable attorney's fees and costs;

6. Such other legal and equitable relief to which Plaintiffs may be entitled;

7. Punitive damages, if appropriate; and

8. Plaintiffs further demand a jury to try this cause.

**Filed electronically this 14th day of March, 2025.**

    Respectfully submitted,

    /s/ G. Madison Roberts
    G. Madison Roberts (TN Bar # 040618)
    LAW OFFICES OF ERIC B. FOUST
    422 S. Gay Street, Suite 302
    Knoxville, TN 37902
    Phone: (423) 504-2054
    Fax: (865) 381-0682
    Email: gmadisonroberts@gmail.com

    /s/ Dan Channing Stanley
    Dan Channing Stanley (TN Bar # 021002)
    422 S. Gay Street, Suite 301
    Knoxville, TN 37902
    Phone: (865) 337-5737
    Fax: (865) 522-9945
    Email: dan@knoxvilleattorney.com

/s/ Ursula Bailey
Ursula Bailey (TN Bar # 020616)
LAW OFFICES OF URSULA BAILEY
422 S. Gay Street, Suite 301
Knoxville, TN 37902
Phone: (865) 337-5737
Fax: (865) 522-9945
Email: ubailey65@gmail.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail, postage prepaid. Parties may access this filing through the Court's electronic filing system.

/s/ Dan Channing Stanley